UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICCARDO G. CIOLINO,<br><br>Plaintiff,<br><br>v.<br><br>KEYSTONE SHIPPING CO., KEYSTONE MANAGEMENT SERVICES, INC., CHESAPEAKE SHIPPING, INC., CHILBAR SHIPPING COMPANY, MARGATE SHIPPING COMPANY, and KEYSTATES, INC.,<br><br>Defendants. | Case No. 21-cv-11246-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                   **February 11, 2022**

### I.   Introduction

Plaintiff Riccardo Ciolino ("Ciolino") has filed this lawsuit against Defendants Keystone Shipping Co. ("Keystone Shipping") and Keystone Management Services, Inc. ("Keystone Management") (collectively, "Keystone"), Chesapeake Shipping, Inc. ("Chesapeake"), Chilbar Shipping Company ("Chilbar"), Margate Shipping Company ("Margate") and Keystates Inc. ("Keystates") (collectively, "Defendants") alleging negligence under the Jones Act against Keystone Shipping and Keystone Management (Count I), unseaworthiness under general maritime law against all Defendants (Count II) and maintenance and cure under general maritime law against Keystone Shipping (Count III) arising from personal injuries suffered by Ciolino due to his exposure to asbestos fibers while working aboard vessels owned and operated by Defendants. D. 1. Keystone Shipping, Keystone Management, Chilbar, Margate and Keystates each now move

to dismiss for lack of personal jurisdiction. D. 14; D. 15; D. 16; D. 17; D. 18. In response, Ciolino opposes the motions and, alternatively, requests jurisdictional discovery. D. 29 at 17–18. For the reasons stated below, the Court DENIES Keystone Shipping and Keystone Management's motions to dismiss, D. 14; D. 15; ALLOWS Ciolino's request for jurisdictional discovery, see D. 29; and DENIES WITHOUT PREJUDICE Chilbar, Margate and Keystates's motions to dismiss, D. 16; D. 17; D. 18.

## II.   Standard of Review

In ruling on a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) without an evidentiary hearing, a district court must apply the *prima facie* standard of review. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under the *prima facie* standard, a plaintiff must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." Id. (citing United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)). The Court considers the facts alleged in the pleadings as well as the parties' supplemental filings. Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995). The Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). In doing so, the Court will "not credit conclusory allegations or draw farfetched inferences." Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). The Court is also required to "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Mass. Sch. of Law, 142 F.3d at 34.

## III.   Factual Background

The following facts are primarily drawn from Ciolino's complaint, D. 1, Ciolino's affidavit filed with his opposition, D. 29-1, and accompanying documents.

Ciolino is a resident of Gloucester, Massachusetts. D. 1 ¶ 1. During the nine-year period from April 1997 through April 2006, Ciolino was employed by Keystone Shipping and/or its wholly owned subsidiary Keystone Management as a merchant seaman and member of the crew of the M/V OCEAN CITY, the S.S. CHILBAR, the S.S. CHELSEA and the S.S. KEYSTONE TEXAS. Id. ¶ 8. Ciolino worked exclusively for Keystone aboard these vessels during this period. D. 29-1 at 7 ¶ 26. Some of the employment documents Ciolino received during his time aboard Keystone-chartered vessels, such as certificates of discharge and letters of sea time, listed Keystone Management as his employer while others referenced Keystone Shipping. See id. at 9–35.

Ciolino first began working as an able-bodied seaman for Keystone Shipping after responding to a job posted at Ciolino's union, the National Maritime Union ("NMU") Boston Local. Id. at 2 ¶ 5. After Ciolino passed a physical exam, Keystone Shipping bought him a plane ticket from Boston to Singapore where he boarded the M/V OCEAN CITY on April 4, 1997. Id. at 2 ¶¶ 5–6; see D. 1 ¶ 9. The M/V OCEAN CITY was owned by Chesapeake and chartered by Keystone Shipping and Keystone Management. D. 1 ¶¶ 16–18. Ciolino completed this "hitch" on July 31, 1997 in Kuwait and Keystone Shipping purchased him a ticket for a return flight to Boston. D. 29-1 at 2–3 ¶ 6.

After this first hitch aboard the M/V OCEAN CITY, Keystone Shipping directly hired Ciolino, bypassing his union. Id. at 3 ¶ 7. Ciolino received a call at his home in Gloucester from Keystone Shipping, offering him another position abord the M/V OCEAN CITY. Id. On November 22, 1997, Keystone Shipping flew Ciolino from Boston to meet the vessel in the United Arab Emirates. Id. Ciolino completed this hitch on April 1, 1998 in Kuwait and Keystone Shipping again purchased him a plane ticket to return to Boston. Id.

Between July 30, 1998 and August 19, 2001, Ciolino completed five more hitches on the M/V OCEAN CITY in this fashion. Id. at 3 ¶ 8. After Ciolino's second or third trip aboard the M/V OCEAN CITY, Ciolino was promoted and told by Keystone Shipping that he had a permanent relief position with the company. Id. at 3 ¶ 9. His last hitch aboard the M/V OCEAN CITY ended on August 19, 2001. Id. at 3 ¶ 10. During Ciolino's time working on the M/V OCEAN CITY, many of the other crew members were also from the NMU Boston Local, including the chief officer (who later became the captain), the third mate, the second mate, two qualified members of the engine department, two wipers and two or three other able-bodied seamen. Id. at 4 ¶ 11.

From January 2002 to April 2006, Keystone Shipping employed Ciolino for various periods to work aboard the S.S. CHILBAR, the M/V CHELSEA and the S.S. KEYSTONE TEXAS. See id. at 4–6 ¶¶ 13–20. Chilbar owned the S.S. CHILBAR, while Margate owned both the S.S. CHELSEA and the S.S. KEYSTONE TEXAS. D. 1 ¶¶ 19, 21, 23. All three ships were chartered by Keystone Shipping. Id. ¶¶ 20, 22, 24. Many of the other crew members aboard the S.S. CHILBAR, including the captain, the chief officer, the second mate, the third mate and two able-bodied seamen, were also from the NMU Boston Local. D. 29-1 at 5 ¶ 16.

Each time Ciolino was hired, he received a call from Keystone Shipping offering him the position. See id. at 3–5 ¶¶ 8, 14, 18, 19. Ciolino would then accept the position and undergo a physical exam before Keystone Shipping purchased him a plane ticket to perform the trip and a return ticket to Boston. Id. Keystone Shipping mailed Ciolino his weekly or biweekly checks, pay stubs, year-end tax documents and other documents to his residence in Gloucester. Id. at 4–6 ¶¶ 12, 17, 20.

4

Ciolino continued to work for Keystone Shipping from June 2006 to September 2011 aboard a vessel owned by the United States Navy and operated by Keystone Shipping. Id. at 6 ¶¶ 21–24. He stopped working after about November 2019, when his health deteriorated "to the point that [he] became too week to continue." Id. at 7 ¶ 28. As alleged, Ciolino was exposed to, and inhaled, asbestos fibers while in the performance of his duties as a member of the M/V OCEAN CITY, the S.S. CHILBAR, the S.S. CHELSEA and the S.S. KEYSTONE TEXAS. D. 1 ¶¶ 26–29. After multiple doctor's visits, tests and pulmonary surgery, Ciolino was diagnosed with benign asbestos pleural effusion, a condition that has significantly reduced his stamina and strength. D. 29-1 at 7 ¶ 28; see D. 30 ¶ 30. Ciolino has received all the treatment for his condition from providers and doctors in Massachusetts. D. 29-1 at 7 ¶ 29. Further, all the costs and expenses for his treatment, excluding deductibles and coinsurance payments, were paid by Ciolino's private health insurance obtained through the Massachusetts Health Connector. Id. at 7 ¶ 30. Ciolino's health insurance premium is based upon his family's income and subsidized by the Commonwealth of Massachusetts. Id.

### IV.   Procedural History

Ciolino commenced this action on July 30, 2021. D. 1. Keystone Shipping, Keystone Management, Chilbar, Margate and Keystates each now move to dismiss for lack of personal jurisdiction. D. 14; D. 15; D. 16; D. 17; D. 18. Ciolino urges the Court to deny the motions to dismiss or, alternatively, seeks jurisdictional discovery. D. 29 at 17–18. The Court heard the parties on the pending motions and took these matters under advisement. D. 39.

V.    **Discussion**

   A.    <u>**Personal Jurisdiction**</u>

Keystone Shipping, Keystone Management, Chilbar, Margate and Keystates each argue that the Court lacks personal jurisdiction over them.  D. 14; D. 15; D. 16; D. 17; D. 18.  Ciolino focuses his opposition on Keystone Shipping and Keystone, "which appear to have significant control and/or ownership of the other defendants" and concedes that he otherwise cannot marshal the requisite facts as to the forum contacts by Chilbar, Margate or Keystates but requests jurisdictional discovery into Keystone Shipping and Keystone Management's ownership or control of same and their respective contacts with Massachusetts.  <u>See</u> D. 29 at 6, 17–18.  Accordingly, the Court limits its personal jurisdiction analysis to Keystone Shipping and Keystone Management and separately addresses Ciolino's request for jurisdictional discovery below.

As a preliminary matter, the Court assesses the citizenship of the parties.  Here, neither Keystone Shipping nor Keystone Management are citizens of Massachusetts:  both are incorporated in Delaware with principal places of business in Pennsylvania.  D. 1 ¶¶ 2–3.  "Prior to exercising personal jurisdiction over a nonresident defendant, a judge must determine that doing so comports with both the forum's long-arm statute and the requirements of the United States Constitution."  <u>SCVNGR, Inc. v. Punchh, Inc.</u>, 478 Mass. 324, 325 (2017) (citing <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 290 (1980)).  The Court's analysis of the Massachusetts long-arm statute "precede[s] consideration of the constitutional question" of due process.  <u>Id.</u>

   1.    *Massachusetts Long-Arm Statute*

Ciolino asserts that Keystone Shipping and Keystone Management's contacts in Massachusetts satisfy Section 3(a) of the long-arm statute, which provides for personal jurisdiction

"over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth." Mass. Gen. L. c. 223A, § 3(a); see D. 29 at 8–11. "[F]or jurisdiction to exist pursuant to § 3(a), therefore, the facts must satisfy two requirements: 1) the defendant must have transacted business in Massachusetts, and 2) the plaintiff's claim must have arisen from the defendant's transaction of such business." Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 63 (D. Mass. 2001) (citing Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994)).

                    a)        Transaction of Business in Massachusetts

The "transacting business" clause is construed "broadly." Shipley Co., Inc. v. Clark, 728 F. Supp. 818, 821 (D. Mass. 1990). For example, courts have interpreted this provision to cover instances in which a defendant engages in "the purposeful and successful solicitation of business from residents of the Commonwealth." Tatro, 416 Mass. at 767; see Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 113 (1st Cir. 1997) (collecting cases). A defendant's "physical presence is not required to satisfy § 3(a)." Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc., 764 F.2d 928, 933 (1st Cir. 1985). Rather, the touchstone is "whether the defendant attempted to participate in the commonwealth's economic life." United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992) ("Pleasant Street I"). "[A]nything but the most incidental commercial contact is sufficient." Cannonball Fund, Ltd. v. Dutchess Cap. Mgmt., LLC, 84 Mass. App. Ct. 75, 98 (2013) (citation and internal quotation marks omitted). "This standard is not especially rigorous" and may be satisfied by mere "transitory contact with the forum." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 n.3 (1st Cir. 2016) (citation and internal quotation marks omitted).

Keystone Shipping and Keystone Management argue that they do not "transact business" in Massachusetts because they do not maintain an office, telephone listing, mailing address or bank account in Massachusetts; do not own or rent any property in Massachusetts; and are not qualified to conduct business in Massachusetts and do not advertise in Massachusetts. D. 19 at 8; D. 20 at 8. Such, however, fails to address the facts asserted in Ciolino's affidavit indicating that Keystone Shipping and Keystone Management reached into Massachusetts numerous times over a fourteen-year period seeking crew members, including Ciolino, for its vessels. See D. 29-1. For example, Keystone Shipping posted positions with, and hired many crew members from, the NMU Boston Local. See id. at 2 ¶ 5, 4 ¶ 11, 5 ¶ 16. Following Ciolino's first trip aboard the M/V OCEAN CITY in April 1997, Keystone Shipping contacted Ciolino at his home in Gloucester to offer him further trips. See, e.g., id. at 3 ¶ 7. Each time, Keystone Shipping would purchase Ciolino a plane ticket to the vessel's location and a return ticket to Boston, id. at 3 ¶ 8, as well as mail his weekly or biweekly checks, pay stubs and year-end tax documents to his home in Gloucester, id. at 4 ¶ 12. This pattern continued through April 2006, when Ciolino completed his final trip on the S.S. KEYSTONE TEXAS. See D. 1 ¶ 29; D. 29-1 at 5 ¶ 19. Further, during his time aboard Keystone-chartered vessels, some of Ciolino's certificates of discharge and letters of sea time listed Keystone Management as his employer while others referenced Keystone Shipping. See D. 29-1 at 9–35.

Keystone Shipping and Keystone Management's conduct satisfies the "transacting business" requirement. See Pike v. Clinton Fishpacking, Inc., 143 F. Supp. 2d 162, 167 (D. Mass. 2001). In Pike, the plaintiff, a Massachusetts resident, brought a claim under the Jones Act after suffering an injury while fishing off the coast of Alaska on a vessel owned by a Washington State corporation. Pike, 143 F. Supp. 2d at 164–66. The fishing vessel's captain regularly called a fishing company in Massachusetts seeking crew members and hired a significant portion of his

8

crew from Massachusetts. Id. at 165. After learning of an open position from the Massachusetts fishing company—who told the plaintiff that the Washington corporation had been "constantly calling . . . for crewmembers"—the plaintiff contacted the vessel's owner. Id. The vessel's captain called the plaintiff the next day, offering him the position. Id. Pike concluded that "the hiring of the plaintiff, who is a Massachusetts resident, was itself a Massachusetts transaction" and, therefore, satisfied Section 3(a). Id. at 167 (citing Tatro, 416 Mass. at 767, 770). Here, Keystone Shipping and Keystone Management's repeated recruitment and hiring of Ciolino and others from Massachusetts over a fourteen-year period similarly satisfies the "transacting business" requirement. See id.; see also Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712 (1st Cir. 1996) (holding that Section 3(a)'s requirements were satisfied where Hong Kong corporation with no place of business outside of Hong Kong sent correspondence soliciting business in Massachusetts); Tatro, 416 Mass. at 768–69 (concluding that California hotel's "purposeful and successful solicitation of business from residents of the Commonwealth" resulting in its "acceptance of the plaintiff's room reservation" constituted transaction of business in Massachusetts).

                b)        Whether Injury Arises from Transaction of Business

A "but for" test applies for determining when an injury "arises" from transacting business in Massachusetts. Sigros, 129 F. Supp. 2d at 65 (citing Tatro, 416 Mass. at 770–71). Pike concluded that "the defendants' decision to accept the plaintiff's employment formed part of an overall purposeful solicitation of employees from Massachusetts" and constituted the "'first step' in his alleged injury." Pike, 143 F. Supp. 2d at 167 (quoting Tatro, 416 Mass. at 770). Likewise, but for Keystone contacting Ciolino in Massachusetts, Ciolino would not have worked aboard Defendants' vessels, taking the "first step" toward his alleged personal injuries. See id.; see Tatro, 416 Mass. at 771–72 (concluding that "arising from" requirement was satisfied because, "[b]ut for

9

the defendant's solicitation of business in Massachusetts, and its agreement to provide the plaintiff with hotel accommodations in . . . California, the plaintiff would not have been injured in a room of the hotel"); Nowak, 94 F.3d at 712 (applying Tatro to similar facts). Accordingly, Ciolino's claim arises from Keystone Shipping and Keystone Management's transaction of business in the forum. The Massachusetts long-arm statute's requirements are, thus, satisfied.

        2.      *Constitutional Due Process*

"For jurisdiction to be proper, constitutional requirements of due process must be met." Shipley Co., 728 F. Supp. at 822. The Fifth Amendment's Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471–72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). For a court to assert personal jurisdiction over a nonresident defendant, constitutional due process demands that the defendant have "minimum contacts" with the forum state, meaning that the defendant must "possess[] sufficient contacts with the forum state so that subjecting him, her, or it to the forum's jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" Pleasant Street I, 960 F.2d at 1087 (quoting Int'l Shoe Co., 326 U.S. at 316).

There are two types of personal jurisdiction to consider in the constitutional analysis: general and specific. Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010). Because Ciolino does not press general jurisdiction, see D. 29 at 7, the Court's analysis focuses on specific jurisdiction. The specific jurisdiction inquiry is threefold: relatedness, purposeful availment and reasonableness. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009) (quoting N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005)). The plaintiff bears the burden

10

of proof on all three elements. See Rodriguez v. Samsung Electronics Co., Ltd., 827 F. Supp. 2d 47, 50–51 (D. Mass. 2011).

          a)        Relatedness

The relatedness inquiry focuses on whether "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994) (quoting Pleasant Street I, 960 F.2d at 1088–89) (internal quotation marks omitted). This test "requires an 'arising from' analysis distinct from the 'but for' analysis undertaken under the Massachusetts long-arm statute." Sigros, 129 F. Supp. 2d at 67. This constitutional test is a "flexible, relaxed standard," id. (quoting Pritzker, 42 F.3d at 60–61), but still requires a causal relationship between the plaintiff's claim and defendant's forum-related conduct, Harlow v. Children's Hosp., 432 F.3d 50, 60–61 (1st Cir. 2005). Although not precisely proximate cause, "due process demands something like a 'proximate cause' nexus." Id. (quoting Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co., 295 F.3d 59, 65 (1st Cir. 2002)). This standard requires defendant's in-forum contacts to be the "foreseeable" cause of plaintiff's injuries. See Nowak, 94 F.3d at 715 (noting that "[f]oreseeability is a critical component in the due process inquiry, particularly in evaluating purposeful availment, and . . . also informs the relatedness prong"). "[T]he defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case." Harlow, 432 F.3d at 61 (alteration in original) (quoting Pleasant Street I, 960 F.2d at 1089) (further citation and internal quotation marks omitted). Further, while a court may have specific jurisdiction when there is only a single contact with the forum state, that contact must be "meaningful." Nowak, 94 F.3d at 717 (citing Burger King Corp., 471 U.S. at 475 n.18; McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

11

Keystone Shipping and Keystone Management argue that, because their "chartered vessels never once called or docked at a Massachusetts port in the period designated by [Ciolino], it is impossible for [Ciolino] to establish relatedness between the forum state and the cause of action." D. 19 at 12 (asserting that "[t]here is simply no connection between [Ciolino's] claim . . . and this forum"); D. 20 at 12 (same). As discussed above, however, Keystone Shipping and Keystone Management contacted Ciolino numerous times over the relevant fourteen-year period, in addition to posting positions at the NMU Boston Local, for the purpose of hiring crew for their vessels. See, e.g., D. 29-1 at 2–3 ¶¶ 5, 7–8. Further, Ciolino's claims relate to these forum contacts, as he alleges that his work aboard Keystone Shipping and Keystone Management's vessels exposed him to asbestos, causing him personal injuries. See D. 1 ¶ 30. "The defendants' recruitment of Massachusetts [crew members] is enough to make the harm allegedly suffered here foreseeable." See Pike, 143 F. Supp. 2d at 169 (noting that "it is foreseeable that a fisherman recruited in Massachusetts might be injured aboard a vessel" elsewhere); see also Nowak, 94 F.3d at 715–16 (explaining that "[i]f the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish," then "the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage"). Accordingly, Ciolino has satisfied the relatedness requirement.

            b)      Purposeful Availment

"The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state." Weinberg v. Grand Circle Travel, LLC, 891 F. Supp. 2d 228, 245 (D. Mass. 2012) (citing Sawtelle, 70 F.3d at 1391). Instead, the inquiry into purposeful availment focuses on acts "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits

and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe Co., 326 U.S. at 319). "The two key focal points of this concept are voluntariness and foreseeability." Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007). The defendant's conduct must be "voluntary and not based on the unilateral actions of another party" so that the defendant could "reasonably anticipate being haled into court there." Id. (citations and internal quotation marks omitted); see Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008) (explaining that a defendant's "contacts must be deliberate"). "Jurisdiction . . . may not be avoided merely because the defendant did not physically enter the forum State." Burger King Corp., 471 U.S. at 476. Courts "look to evidence of telephone or electronic communication when a defendant has not been physically present in the forum state because it serves as evidence that the defendant 'reached into the forum.'" Adams v. Adams, 601 F.3d 1, 7 (1st Cir. 2010) (quoting Swiss Am. Bank, Ltd., 274 F.3d at 622).

Here, Keystone Shipping and Keystone Management argue that "it is impossible for [Ciolino] to substantiate any argument that [Keystone Shipping or Keystone Management] purposefully availed themselves to the Commonwealth because [they] never chartered a vessel that made contact with a Massachusetts[] port in the designated time frame." D. 19 at 13; D. 20 at 13. As noted above, however, a defendant's physical presence in the forum state is not required for jurisdiction, Burger King Corp., 471 U.S. at 476, and telephone or other communication initiated by the defendant can satisfy the purposeful availment requirement, see Adams, 601 F.3d at 7. Keystone Shipping and Keystone Management reached into Massachusetts to hire its residents, including Ciolino. See, e.g., D. 29-1 at 2–3 ¶¶ 5, 7–8. Such conduct constituted voluntary, deliberate contact with the forum. See Nowak, 94 F.3d at 716–17 (concluding that Hong Kong defendant's correspondence soliciting business from plaintiff satisfied minimal contacts requirement); Sigros, 129 F. Supp. 2d at 68 (concluding that, by advertising its resorts,

defendant "plainly 'reached into Massachusetts with an unprompted solicitation and sought to entice Massachusetts residents to leave the state and visit its . . . facilities'" (quoting Nowak v. Tak How Inv. Ltd., 899 F. Supp. 25, 32 (D. Mass. 1995), aff'd sub nom. Nowak, 94 F.3d at 708); cf. Adams, 601 F.3d at 7 (finding no purposeful availment by Texas defendant where plaintiff had initiated single phone call to defendant and provided no evidence that plaintiff himself was in Massachusetts when he placed the call). Further, Keystone Shipping and Keystone Management's recruiting efforts made it reasonably foreseeable that they could be haled into court in Massachusetts. See Pike, 143 F. Supp. 2d at 170 (concluding that the defendant's contacts, which included "actively [seeking] employees from Massachusetts over a period spanning nearly twenty years," were "designed to bring Massachusetts residents [outside the forum]" and "rendered foreseeable the possibility of being haled into a Massachusetts court"). Accordingly, Ciolino has satisfied the purposeful availment requirement.

c) <u>Reasonableness</u>

The reasonableness inquiry is based upon a balancing of the following "Gestalt factors": "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Cossaboon, 600 F.3d at 33 n.3 (quoting Harlow, 432 F.3d at 67). These factors are intended "to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." Nowak, 94 F.3d at 717.

First, neither Keystone Shipping nor Keystone Management would be unduly burdened by litigating in this forum. "[T]he concept of burden is inherently relative, and, insofar as staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly, [the first] factor is

only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker, 42 F.3d at 64. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp., 471 U.S. at 477. Here, Keystone Shipping and Keystone Management argue that they would be "significantly burdened" because their "business is based in Pennsylvania." D. 19 at 15; D. 20 at 15. Such, however, fails to establish any "special or unusual burden." See Pritzker, 42 F.3d at 64.

Second, "Massachusetts has a 'stake in being able to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors.'" Adelson, 510 F.3d at 51 (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 62 (1st Cir. 2002)). Here, Ciolino is a longtime Massachusetts resident who allegedly developed a chronic disease after being exposed to asbestos while working for Defendants. See D. 1 ¶ 30. Moreover, Ciolino's treatment for his illness has occurred in Massachusetts and has primarily been paid for by his health insurance, the premium for which is subsidized by the Commonwealth of Massachusetts. D. 29-1 at 7 ¶¶ 29–30. Given Massachusetts's interest in providing a convenient forum for its residents injured by out-of-state actors, Adelson, 510 F.3d at 51, Keystone Shipping and Keystone Management's argument that "Massachusetts has little interest in adjudicating a dispute that only could have occurred in states other than Massachusetts," D. 19 at 15; D. 20 at 15, is unpersuasive.

Third, Ciolino has a strong interest in litigating in this forum. Keystone Shipping and Keystone Management argue only that Ciolino "will not be burdened by moving the forum state." D. 19 at 15; D. 20 at 15. Ciolino, however, now suffers from an illness that has primarily been treated in Massachusetts and significantly reduced his stamina and strength, forcing him to stop working. D. 29-1 at 7 ¶¶ 28–29.

Fourth, regarding the judicial system's interest in obtaining the most effective resolution of the controversy, the First Circuit has remarked that "[u]sually this factor is a wash." Nowak, 94 F.3d at 718. "[T]he interest of the judicial system in the effective administration of justice does not appear to cut in either direction" here. Ticketmaster, 26 F.3d at 211.

"The final gestalt factor addresses the interests of the affected governments in substantive social policies." Nowak, 94 F.3d at 719. "Here, the most prominent policy implicated is the ability of a state to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors." Cf. Sawtelle, 70 F.3d at 1395. Here, Massachusetts "has an interest in protecting its citizens" from out-of-state defendants" and "affording its citizen[ ]," Ciolino, "a convenient forum" for his claims. Nowak, 94 F. 3d at 719; D. 29 at 16.

In sum, the first three and the fifth factors favor maintaining the action in this forum and the fourth factor does not alter this conclusion. Accordingly, Ciolino has satisfied the reasonableness requirement and the Court may exercise personal jurisdiction over Keystone Shipping and Keystone Management consistent with constitutional due process.

For all these reasons, the Court DENIES Keystone Shipping and Keystone Management's motions to dismiss for lack of personal jurisdiction, D. 14; D. 15.

### B. Jurisdictional Discovery

Particularly in regard to Chilbar, Margate and Keystates, Ciolino alternatively seeks jurisdictional discovery as to their forum contacts as well "into [Keystone Shipping] and [Keystone Management's] ownership and/or control of these entities." D. 29 at 6, 17–18. The First Circuit has "long held that 'a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense.'" Swiss Am. Bank,

16

Ltd., 274 F.3d at 625 (emphasis omitted) (quoting Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir. 1997)).  "[T]he threshold showing that a plaintiff must present to the district court to merit limited discovery is relatively low."  Blair v. City of Worcester, 522 F.3d 105, 111 (1st Cir. 2008) (citing Surpitski v. Hughes-Keenan Corp., 362 F.2d 254, 255–56 (1st Cir. 1966) (per curiam) (explaining that a party should be allowed to conduct jurisdictional discovery when its position is not frivolous)).

"However, that entitlement is not absolute. . . . [E]ven when the plaintiff has been diligent and has made a colorable claim for personal jurisdiction, the district court still has broad discretion to decide whether discovery is required."  Swiss Am. Bank, Ltd., 274 F.3d at 625–26 (citations and internal quotation marks omitted).  "[I]t is . . . incumbent upon the plaintiff to 'present facts to the court which show why jurisdiction would be found if discovery were permitted.'"  Rain ex rel. Crandall v. Conn. Gen. Corp., No. 17-cv-30115, 2019 WL 7604856, at *7 (D. Mass. Aug. 6, 2019) (quoting Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007)).

Ciolino argues that there is a "colorable" claim of jurisdiction over Chilbar, Margate and Keystates because "the Defendants are part of a communal enterprise."  D. 29 at 17–18.  For support, Ciolino primarily points to the declaration of Joseph Wassel ("Wassel"), Keystone Shipping's vice president and treasurer, in which Wassel refers to the non-Keystone Shipping Defendants as "Keystone Shipping's related entities."  Id.; see D. 14-2 ¶ 1; D. 15-2 ¶ 1; D. 16-2 ¶ 1; D. 17-2 ¶ 1; D. 18-2 ¶ 1.

While there exists a "presumption of corporate separateness" between parent and subsidiary corporations, Pleasant Street I, 960 F.2d at 1091 (citation omitted), "courts can—and usually do—make an actual inquiry into the nature of the interrelationship before abandoning the jurisdictional quest."  Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465 (1st Cir. 1990).  Courts

17

often are asked to "determine[e] if [their] jurisdiction over the offspring begets jurisdiction over the parent." See, e.g., Pleasant Street I, 960 F.2d at 1091. But "the caselaw addressing the atypical scenario in which a plaintiff seeks to hale into court a dominated subsidiary on the basis of its dominating parent's forum contacts is sparse." Sanford v. Nat'l Ass'n for the Self-Employed, Inc., No. CIV. 09-22-P-H, 2009 WL 1448720, at *8–10 (D. Me. May 21, 2009).

"[T]he rationale of [the former category of] cases does not support the proposition that, because the court has jurisdiction over a parent corporation or dominating individual, without more, it has jurisdiction over the alter ego corporation." Home-Stake Prod. Co. v. Talon Petroleum, C.A., 907 F.2d 1012, 1020–21 (10th Cir. 1990) (concluding that because "[t]he dominated corporation does not direct and control its dominating corporate or individual alter ego . . . it is unfair to impute to the dominated corporation the forum contacts of its alter ego"). "[O]utside of the Tenth Circuit," however, "there is authority for the proposition that a dominating parent's contacts may subject its dominated subsidiary to a forum's jurisdiction." Sanford, 2009 WL 1448720, at *8–10 (collecting cases); see E. Concrete Materials, Inc. v. ACE Am. Ins. Co., 948 F.3d 289, 298–99 (5th Cir. 2020) (concluding that nonresident subsidiary purposely availed itself of benefits of Texas forum through its parent corporation); Genesis Bio Pharms., Inc. v. Chiron Corp., 27 F. App'x 94, 98 (3d Cir. 2002) (stating that under New Jersey law "a parent corporation's contacts with the forum state may justify exercise of personal jurisdiction over its (wholly-owned) non-resident subsidiary"); In re P.R. Air Disaster Litig., 340 F. Supp. 492, 496 (D.P.R. 1972) (noting that under Pennsylvania law a non-resident subsidiary may be subject to personal jurisdiction based upon the parent's contacts on "a showing that the parent is the subsidiary's alter ego"). In this jurisdiction, no court appears squarely to have addressed this issue.

Given the dearth of binding authority here, Ciolino has, at minimum, made a non-frivolous,

colorable claim of jurisdiction over Chilbar, Margate and Keystates.  See Blair, 522 F.3d at 111; Swiss Am. Bank, Ltd., 274 F.3d at 625–26.  Wassel's reference to the non-Keystone Shipping Defendants as "Keystone Shipping's related entities," see, e.g., D. 14-2 ¶ 1, plausibly suggests that Chilbar, Margate and Keystates may be subsidiaries of Keystone Shipping and/or Keystone Management and that jurisdictional discovery might elucidate the extent of control, if any, Keystone exerts over such entities.  A sufficient degree of control could give rise to personal jurisdiction over Chilbar, Margate and Keystates based upon Keystone Shipping and Keystone Management's contacts in Massachusetts.  The Court, however, need not decide now the merits of Ciolino's potential claims of personal jurisdiction regarding these Defendants.

Accordingly, the Court ALLOWS Ciolino's request for jurisdictional discovery, D. 29 at 17–18, as follows:  Ciolino may serve upon Keystone Shipping written discovery for the purpose of assessing Keystone Shipping and Keystone Management's ownership or control of Chilbar, Margate and Keystates; the respective contacts of Chilbar, Margate and Keystates with Massachusetts; and the relationship of Chilbar, Margate and Keystates to the vessels upon which Ciolino worked to the extent such relates to Ciolino's claims brought under general maritime law, see D. 29 at 6 n.1.  Such written discovery shall be served by February 25, 2022 and the deposition of Wassel shall go forward within thirty days of the receipt of the discovery responses to same.

## VI. Conclusion

For the foregoing reasons, the Court DENIES Keystone Shipping and Keystone Management's motions to dismiss, D. 14; D. 15; ALLOWS Ciolino's request for jurisdictional discovery as to Chilbar, Margate and Keystates, see D. 29; and DENIES WITHOUT PREJUDICE Chilbar, Margate and Keystates's motions to dismiss, D. 16; D. 17; D. 18.  Ciolino shall serve

written discovery by February 25, 2022 and the deposition of Joseph Wassel shall proceed within thirty days of receiving the response to such written discovery.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge