UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RICCARDO G. CIOLINO, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>KEYSTONE SHIPPING CO. and )<br>KEYSTONE MANAGEMENT )<br>SERVICES, INC., )<br>)<br>Defendants. ) | Case No. 21-cv-11246-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                                    **February 1, 2024**

**I.     Introduction**

Plaintiff Riccardo Ciolino ("Ciolino") has filed this lawsuit against Defendants Keystone Shipping Co. and Keystone Management Services, Inc. (collectively, "Keystone") alleging negligence under the Jones Act (Count I), unseaworthiness (Count II) and maintenance and cure (Count III) arising from personal injuries allegedly suffered by Ciolino due to his exposure to asbestos while working aboard vessels owned and operated by Keystone. D. 1.[1] Keystone has moved to strike Ciolino's late-filed supplemental Fed. R. Civ. P. 26(a)(2)(C) expert disclosure of non-retained, treating physicians, D. 83. Keystone has also moved for summary judgment on all counts. D. 72; D. 89. For the reasons stated below, the Court denies Keystone's motion to strike,

---

[1] Ciolino has voluntarily dismissed the other Defendants. D. 52, 56.

D. 83, denies Keystone's first motion for summary judgment, D. 72, and denies Keystone's second motion for summary judgment, D. 89.

## II. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III. Factual Background

Unless otherwise noted, the following facts are undisputed.

### A. Ciolino's Employment by Keystone

Ciolino worked as a commercial fisherman from approximately 1988 through 1995. D. 85 ¶ 2; D. 87 ¶ 2. From approximately February 1996 through January 1997, Ciolino was employed as an Able Seaman by three non-parties and worked on three merchant vessels. D. 85 ¶ 4; D. 87 ¶ 4. From April 1997 to September 2011, Ciolino was employed by Keystone as an Able Seaman and/or a Bosun on several vessels, including the M/V OCEAN CITY, the S.S. CHILBAR, the M/V CHELSEA, the S.S. KEYSTONE TEXAS and the USNS LCPL ROY M. WHEAT. D. 85 ¶ 5; D.

87 ¶ 5. Finally, from October 2011 to July 2017, Ciolino worked as an Able Seaman and/or Boson for vessels not owned by Keystone. D. 85 ¶ 6; D. 87 ¶ 6.

### B. The S.S. CHILBAR

The S.S. CHILBAR was a steam powered tanker that was built in 1959 and scrapped in February 2005. D. 85 ¶ 8; D. 87 ¶ 8. While employed by Keystone as an Able Seaman and/or Boson, Ciolino worked on the S.S. CHILBAR from January 2002 to February 2005. D. 85 ¶ 7; D. 87 ¶ 7. In this role, Ciolino spent alternating periods of weeks or months living and working on the S.S. CHILBAR and periods of weeks or months ashore and off-duty. D. 85 ¶ 7; D. 87 ¶ 7. Ciolino spent a total of approximately 600 days working and living on the S.S. CHILBAR. D. 85 ¶ 7; D. 87 ¶ 7.

Ciolino claims, and Keystone disputes, that while living on the S.S. CHILBAR, he was exposed to asbestos in his personal living quarters, the crew's common living quarters and in many of the locations on the vessel in which he worked while on watch. D. 85 ¶ 9; D. 87 ¶ 9. Ciolino testified that other officers on the S.S. CHILBAR had warned him about the presence of asbestos on the vessel and instructed him not to disturb the asbestos pipe casting and lagging and asbestos ceiling panels and tiles. D. 88-3 at 10-11, 54-55, 58, 65-66, 68; D. 93-1 ¶¶ 4-6. The officers, including the captains, chief mate and second mate, told Ciolino that all the pipe insulation, all the ceiling panels, and the non-steel bulkhead wall panels located within the crew quarters contained asbestos. D. 93-1 ¶ 4. Ciolino cannot identify asbestos and has never been trained to do so. D. 88-3 at 55; D. 87 at 5; D. 82-7 at 9, 20, 93-94. Ciolino claims that he is not aware of asbestos exposure while working on other vessels nor of any non-occupational asbestos exposure. D. 85 ¶ 10; D. 87 ¶ 10; D. 82-2 at 2-3; D. 82-7 at 19, 34, 41, 54, 74, 78-79.

### C.     Medical Issues

In 2019, Ciolino developed shortness of breath, fatigue and a right sided pleural effusion which appeared to be associated with a lung mass or a partially collapsed lung.  D. 85 ¶ 11; D. 87 ¶ 11.  Ciolino was referred to a thoracic surgeon, Dr. Quadri, for diagnostic/therapeutic lung surgery to treat Ciolino's right lung condition and to rule out mesothelioma.  D. 85 ¶ 11; D. 87 ¶ 11.  On January 10, 2020, Dr. Quadri performed surgery on Ciolino's right lung, during which he observed thickened and abnormal pleura and a trapped and partially collapsed right lower lobe.  D. 85 ¶ 11; D. 87 ¶ 11.  Following the lung surgery, Ciolino developed an infection on his left arm, where the operative I.V. had been inserted, which resulted in cellulitis and thrombophlebitis.  D. 85 ¶ 12; D. 87 ¶ 12.  Because of this complication, Ciolino had to be re-admitted to the hospital, where he underwent vascular surgery involving drainage of infected tissue and the removal of the basilic vein on Ciolino's left arm.  D. 85 ¶ 12; D. 87 ¶ 12.

Ciolino has suffered from chronic Benign Asbestos Pleural Effusion ("BAPE") since 2019.[2]  D. 85 ¶ 13.  As a result of this medical condition, Ciolino has suffered from thickened and abnormal pleura, pleural plaques, pleural effusions, a collapsed lung, shortness of breath and

---

[2] Keystone disputes this diagnosis, arguing that the medical records of the treating providers do not show with certainty that Ciolino suffers from BAPE.  D. 87 ¶ 13.  The records indicate that Ciolino was being "treated for complications from [BAPE]."  D. 82-4 at 1-2 (medical records from Dr. Roderick).  Keystone argues that "Dr. Roderick's records simply note that plaintiff is treating with Dr. Liesching for BAPE" and that Dr. Roderick did not independently diagnose plaintiff as suffering from BAPE.  D. 87 at 10.  Regardless of which physician rendered the diagnosis, Dr. Roderick's records reflect that Ciolino is being treated for BAPE "both [her] office and with . . . Dr. Liesching."  D. 82-4 at 1.

fatigue.³  D. 85 ¶ 16.  BAPE is caused by exposure to asbestos.⁴  D. 85 ¶ 14; D. 84-1 at 4.  BAPE manifests "within 10 to 20 years after exposure."  D. 81-4 at 5; D. 82-6 at 6.

### D. Discovery Dispute

At the request of both parties, the Court granted two, ninety-day extensions on fact and expert discovery deadlines on September 23, 2022 and December 16, 2022, respectively.  D. 65-66, 68-69; D. 74 ¶¶ 8-9; D. 82 ¶¶ 8-9.  After granting the second motion, the Court noted that it did not anticipate any further extensions.  D. 69.  In relevant part, the revised schedule provided that the remaining deadlines would be:  fact discovery to be completed by April 3, 2023, expert disclosures to be made by the party with the burden of proof by June 1, 2023, rebuttal disclosures due by July 3, 2023, and expert discovery to be completed by August 3, 2023.  D. 69.

The June 1, 2023 deadline for filing expert disclosures passed and Ciolino did not serve any expert disclosures on Keystone by that date.  D. 86 at 7.  On June 14, 2023, Keystone filed its first motion for summary judgment.  D. 72.  By this date, Ciolino had not moved for further amendment of the scheduling order deadlines.  D. 74 ¶ 16; D. 82 ¶ 16.  On July 24, 2023, Ciolino sent Keystone his Supplemental Rule 26(a)(2)(C) Expert Disclosure of Non-Retained Treating Physicians.  D. 82-6 at 17 (regarding treating physicians, Dr. Liesching, Dr. Roderick, and Dr. Quadri).  Keystone has moved to strike this late-filed expert disclosure.  D. 83.

---

³ Keystone disputes this fact, citing to a lack of evidentiary support.  D. 87 ¶ 16.  The medical records, however, contain evidence showing that Ciolino experienced these issues and complications.  D. 82-6 at 19-23, 25-27, 29-30, 33-34, 36, 39-45.

⁴ Keystone objects to Ciolino's definition of BAPE because Ciolino cites a definition crafted by legal counsel instead of citing to a definition provided by the treating physicians.  D. 87 ¶ 14.  While the exact medical definition may be in dispute, Ciolino has adduced evidence in support of the fact that BAPE is caused by exposure to asbestos.

IV.     **Procedural History**

Ciolino instituted this action on July 30, 2021. D. 1. Keystone moved to dismiss on October 15, 2021. D. 14; D. 15. The Court denied the motions to dismiss. D. 40. Keystone has now moved for summary judgment, D. 72, 89, and has moved to strike the late-filed expert disclosure, D. 83.[5] The Court heard the parties on the pending motions and took these matters under advisement. D. 98.

V.      **Discussion**

A.      **Motion to Strike**

Keystone moved to strike Ciolino's late-filed supplemental Rule 26(a)(2)(C) expert disclosure of non-retained treating physicians. D. 83. The Federal Rules of Civil Procedure require the disclosure of experts, which are due "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). If a party fails to do so, it is "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). If the Court does not find that the failure is substantially justified or harmless, it may, in its discretion, choose whether to exclude an expert at the summary judgment stage or at trial or impose a less severe sanction. Fed. R. Civ. P. 37(c)(1); Esposito v. Home Depot U.S.A., 590 F.3d 72, 77-78 (1st Cir. 2009). Factors relevant in the determination of whether to exclude such evidence include: "(1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosure's adverse effects—e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket." Esposito, 590 F.3d at 78.

---

[5] The Court allows Keystone's motions to file a reply brief, D. 88, 96, *nunc pro tunc*, and has considered those reply briefs, D. 88-1, 96-1, in the resolution of these motions.

The Court turns to consideration of these factors here. First, it is undisputed that Ciolino submitted his expert disclosures after the Court's June 1, 2023 deadline. D. 86 at 7. The Court granted two, separate extensions of the fact and expert discovery deadlines and indicated that it was not inclined to grant further extensions. D. 66; D. 69. The parties requested the first extension because Keystone had a change in lead counsel. D. 74 at 8; D. 82 at 8. The parties requested the second extension because counsel for both parties had trials and would benefit from more time. D. 74 at 9; D. 82 at 9. Here, it cannot be said that Ciolino's failure to disclose experts by the prescribed deadline has been part of a history of non-compliance with deadlines in this case.[6] Compare Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este, 456 F.3d 272, 277 n.4 (1st Cir. 2006) (concluding that the history of the litigation weighed against plaintiff where "the plaintiff was guilty of several discovery violations besides those related to her expert witness"), with Esposito, 590 F.3d at 79 (considering the history of the litigation factor where party missed only one deadline). In addition, this is not a case where Ciolino has ignored pre-sanction warnings from the Court. See Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003) (affirming dismissal where party, "having been forewarned of the likely consequences of noncompliance, failed to abide by a court order to appear for a deposition within seven days").

Second, preclusion of the experts in this case would be of significant consequence to Ciolino. See Esposito, 590 F.3d at 78-79. Without these experts, Ciolino cannot prove injury or medical causation on any of his claims. Because "the sanction carrie[s] the force of a dismissal,

---

[6] The Court acknowledges that since then Ciolino, after requesting three extensions for a total of sixteen-day extension of the presumptive July 5, 2023 deadline to July 21, 2023, D. 77; D. 79; D. 81) to Keystone's first motion for summary judgment, D. 72, then filed his opposition on August 2, 2023. D. 84. It appears to the Court, however, that given the time of same, this second missed deadline is attributed to the same circumstances proffered as justification for the delay in disclosing experts.

the justification for it must be comparatively more robust." Id. at 79 (citation omitted). Dismissal as a sanction should be reserved for extreme misconduct, Young, 330 F.3d at 81, and should not be granted "casually." Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002).

Third, Ciolino provides various justifications for his late disclosure. First, the small firm representing Ciolino was short staffed during the winter and spring of 2023 due to the loss of two paralegals. D. 86-1 ¶ 3. Ciolino's counsel also experienced a significant increase in his workload in April 2023 due to the motion practice in other cases. Id. ¶¶ 4, 8. Between April 2023 and June 2023, Ciolino's counsel experienced various tragedies in his family that required his attention. Id. ¶¶ 4, 6. In May and June 2023, Ciolino's counsel explained that he had various familial responsibilities, most of which required out-of-state travel. Id. ¶¶ 5, 7. Finally, Ciolino's counsel developed residual bronchitis in the summer that persisted for six weeks. Id. ¶ 9.

Of course, the fact that Ciolino's counsel was occupied with other matters "is no excuse," Tower Ventures, 296 F.3d at 47 n.3, but the delay was due to extraordinary circumstances cited by Ciolino's counsel. See Hobbs v. Am. Sec. Ins. Co., No. 3:08-CV-000471-TBR, 2010 WL 456862, at *3 (W.D. Ky. Feb. 3, 2010) (finding that plaintiffs' insufficient discovery responses and delay in supplementing were substantially justified where counsel showed poor health, repeated hospital stays, death in the family, and staffing and scheduling concerns).

Fourth, the Court has considered the prejudice to Keystone of going "through the pains of preparing a dispositive summary judgment motion premised on [Ciolino's] lack of an expert in an expert-dependent case." Esposito, 590 F.3d at 79 (citing Gagnon v. Teledyne Princeton, Inc., 437 F.3d 188, 198 (1st Cir. 2006)). Moreover, Keystone argues that it has been prejudiced by this late expert disclosure because it unfairly restricted its time for deposing these expert witnesses, challenging their expertise and methodology under Daubert and preparing for trial. D. 83 at 4.

Ciolino contends that despite his late disclosure, he had previously identified his treating physicians as expert witnesses in this case, citing his April 2022 Rule 26(a)(1) initial disclosure, D. 82-1 at 1-2 (identifying, among others, Dr. Roderick, Dr. Liesching and Dr. Quadri, identifying their medical practices and addresses, and noting as to each that "[i]t is expected that the aforementioned physicians and practitioners' knowledge includes but is not limited to Plaintiff's injuries, diagnoses, treatment and damages") and his January 2023 answers to interrogatories, D. 82-2 at 7-8 (identifying these three doctors, among others, as physicians who treated him for BAPE and related injuries); id. at 11 (identifying Dr. Roderick, Dr. Liesching and Dr. Quadri as witnesses Ciolino would call at trial). Despite these early identifications of these three experts, Ciolino argues, Keystone never noticed the depositions or expressed a desire to depose these three experts. D. 86 at 5. In the later January 2023 interrogatory responses, Ciolino narrowed the number of witnesses he would call at trial, indicating that he had "not decided who he may call as an expert witness at trial, however plaintiff may call some or all of his treating physicians; Dr. Sarah Roderick (P.C.P.), Dr. Timothy Liesching (Lung Specialist) and Dr. Syed Quadri (Lung Surgeon)." D. 82-2 at 11. Given the sequence of events here, the Court does not conclude that any prejudice to Keystone outweighs the other relevant considerations in favor of denying exclusion of Ciolino's experts.

Lastly, the impact on the docket does not weigh in favor of preclusion of these experts. Here, although Keystone filed an initial motion for summary judgment based upon the absence of expert disclosures, it has since filed another such motion on substantive grounds in the wake of Ciolino's expert disclosure. The Court has heard the parties on the pending motions, including the summary judgment motions, and it has not yet set a trial date in this case. Accordingly, the Court cannot say that the impact on the docket requires the stronger sanction of preclusion.

Because Ciolino has provided a substantially justifiable explanation for the delayed production of his expert disclosures and upon considering the relevant factors as to whether the sanction of exclusion of the experts that Keystone seeks is warranted here, the Court denies Keystone's motion to strike Ciolino's late-filed supplemental Rule 26(a)(2)(C) expert disclosure of non-retained treating physicians.[7]

B. **Keystone's First Motion for Summary Judgment**

In its first motion for summary judgment, D. 72, Keystone's only basis for seeking summary judgment is Ciolino's failure to disclose experts and produce expert reports by the June 1, 2023 scheduling order deadline. D. 73 at 3-4. Keystone argues that without this expert testimony, Ciolino was unlikely to establish causation, as expert testimony is required to demonstrate that a causal link exists between Keystone's conduct and his alleged injuries. Id. at 4-5. The Court denies this summary judgment motion, D. 72, as moot given its decision to deny the motion to strike Ciolino's Rule 26(a)(2)(C) expert disclosures.

---

[7] Keystone argues that the Court should allow the motion to strike as to Dr. Quadri also for failing to comply with Fed. R. Civ. P. 26(a)(2)(B), which requires expert witnesses to provide a written report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involves giving expert testimony." D. 88-1 at 3. Keystone argues that Dr. Quadri does not qualify as an expert who is not required to provide a written report under Rule 26(a)(2)(C). D. 88-1 at 3-4; Garcia v. City of Springfield Police Dep't, 230 F.R.D. 247, 249 (D. Mass. 2005). Dr. Quadri performed surgery on Ciolino's right lung in January 2020 and was his attending physician during Ciolino's post-surgical hospitalizations. D. 82-6 at 15. Dr. Quadri will testify to Ciolino's right lung surgery, including his observations and findings relating to this surgery, and the causal connection between Ciolino's occupational exposure to asbestos and the condition of Ciolino's right lung, pleura and diaphragm at the time of the surgery, and post-surgical infection and treatment and surgery for same. D. 82-6 at 15. Dr. Quadri will also testify as to Ciolino's lung conditions and diseases, including Ciolino's 2019-2020 pleural effusion, pleural plaques, thickening of the pleura and partially collapsed right lower lobe. D. 82-6 at 15. Given this expected testimony, the Court concludes that Dr. Quadri's testimony arise from his personal knowledge obtained during the course of examination and treatment and an expert report is thus not required. Brown v. KFC Corp., No. 05-11167-MBB, 2007 WL 7055476, at *4 (D. Mass. Mar. 19, 2007). The Court, therefore, denies the motion to strike Dr. Quadri's expert testimony on this alternative basis.

### C. Keystone's Second Motion for Summary Judgment

#### 1. *Negligence under the Jones Act (Count I)*

Ciolino claims that Keystone was negligent under the Jones Act because it failed to provide Ciolino with a reasonably safe place to work. D. 1 ¶¶ 36-39. Under the Jones Act, a seaman may "maintain an action where an employer's failure to exercise reasonable care causes a subsequent injury." Ferrara v. A. & V. Fishing, Inc., 99 F.3d 449, 453 (1st Cir. 1996). While the plaintiff "must establish all the elements of a common-law negligence claim, the burden to prove causation under the Jones Act is 'featherweight.'" Napier v. F/V DEESIE, Inc., 454 F.3d 61, 67 (1st Cir. 2006) (quoting Toucet v. Maritime Overseas Corp., 991 F.2d 5, 10 (1st Cir. 1993)); Ferrara, 99 F.3d at 453. "Liability, therefore, 'exists if the employer's negligence contributed even in the slightest to the plaintiff's injury.'" Ferrara, 99 F.3d at 453 (quoting Toucet, 991 F.2d at 10). The Court turns to the elements of the Jones Act negligence claim: Keystone's duty to Ciolino; Keystone's alleged breach of that duty; and that breach allegedly caused Ciolino to be harmed. Cravo v. F/V SANTA BARBARA, No. 18-12261-PBS, 2021 WL 1087962, at *1 (D. Mass. Feb. 1, 2021).

##### a) Disputed Issues of Material Fact as to Causation

The parties do not dispute that Keystone had an obligation to Ciolino, one of its seamen, see 91 at 4-7, and Keystone does not focus its motion on its alleged breach of that duty, id., but instead contends that the undisputed facts show that Ciolino cannot sustain his burden to show causation. That is, Keystone contends that there is no admissible evidence of breach that Ciolino was exposed to asbestos on its vessels or that any such exposure caused his alleged injuries. Id. Specifically, Keystone argues that Ciolino's knowledge of asbestos on its vessels, particularly the S.S. CHILBAR, is based solely upon the alleged statements made by other officers on the boat and, therefore, is inadmissible hearsay. D. 91 at 6; see Evergreen Partnering Grp., Inc. v. Pactiv

11

Corp., 832 F.3d 1, 12 (1st Cir. 2016) (noting that inadmissible hearsay cannot be considered on summary judgment). Ciolino argues that these statements are not hearsay, as they are admissions of agents of a party opponent, citing Fed. R. Evid. 801(d)(2)(D) (defining a statement offered against a party opponent that "was made by the party's agent or employee on a matter withing the scope of that relationship and while it existed" as non-hearsay). D. 92 at 7.

The statements at issue were made by employees of Keystone who served as officers of the S.S. CHILBAR.[8] D. 93-1 ¶¶ 4-6. These officers, identified as Captain Michael Donovan, Captain Bill Moran, Chief Mate Dan MacDonald, and Second Mate Jim Kidd, communicated that the S.S. CHILBAR contained asbestos while they were present on the vessel and working for Keystone.[9] Id. The officers gave warnings about the presence of asbestos while supervising Ciolino's work and during safety meetings, id. ¶ 6, and they instructed him not to disturb the

---

[8] Keystone argues that paragraph 4 of Ciolino's affidavit should be struck. D. 96-1 at 5-6. Specifically, Keystone argues that Ciolino's statement about officers, other than Dan MacDonald, communicating the presence of asbestos on the ship contradicts his deposition testimony. Id. Although Ciolino did not specifically name all of the officers that warned him about asbestos on the ship, he indicated in his deposition testimony that multiple officers aboard the S.S. CHILBAR cautioned him about the presence of asbestos. See D. 82-7 at 53-54, 67; Gillen v. Fallon Ambulance Serv., 283 F.3d 11, 26 (1st Cir. 2002) (stating that "[a] subsequent affidavit that merely explains, or amplifies upon, opaque testimony given in a previous deposition is entitled to consideration in opposition to a motion for summary judgment"). The Court, therefore, will not strike this paragraph.

[9] Keystone argues that paragraphs 5 and 6 of Ciolino's affidavit also should be struck because they contradict his deposition testimony. D. 96-1 at 6-7. Specifically, Keystone argues that Ciolino never testified about any safety meetings during the deposition. Id. The deposition at least arguably reflects that Ciolino was not asked about safety meetings. See Gattineri v. Wynn MA, LLC, No. 18-11229-FDS, 2022 WL 123621, at *2 (D. Mass. Jan. 13, 2022) (declining to strike a paragraph from an affidavit where the statement did "not clearly contradict the deposition testimony"). The excerpt of the deposition Keystone highlights to suggest that there was inconsistency between Ciolino's deposition testimony and his affidavit reflects questioning related to Ciolino's participation in union meetings and the substance of those meetings rather than safety meetings on the vessel. D. 82-7 at 31. The Court, therefore, will not strike these paragraphs.

asbestos pipe casting and lagging and asbestos ceiling panels and tiles. Id. ¶¶ 4-6. Since the officers, while employed by Keystone on its vessel, made these statements about a safety condition to a subordinate employee, the statements relate to matters within the scope of the officers' employment. See Larch v. Mansfield Mun. Elec. Dep't, 272 F.3d 63, 72 (1st Cir. 2001); see Chery v. Sears, Roebuck & Co., 98 F. Supp. 3d 179, 187 n.8 (D. Mass. 2015). The officers' statements are admissible evidence as to Ciolino's exposure to asbestos on Keystone's vessel and the Court considers them in regard to the motion for summary judgment.

As noted above, various officers on the S.S. CHILBAR warned him about the presence of asbestos on the pipe insulation, the ceiling panels, and the non-steel bulkhead wall panels located within the crew quarters. D. 93-1 ¶ 4; D. 88-3 at 10-11, 54-55, 58, 65-66, 68. Ciolino attests that Chief Mate Dan MacDonald told him that "this dirty white dust in the air and settling on the deck in the crew quarters, contained asbestos from the ceiling panels moving as the ship flexed in rough water."[10] D. 93-1 ¶ 7. According to Ciolino, when the asbestos dust collected during rough weather, Chief Mate Dan MacDonald instructed him and others to "gently sweep up this dust and then go over the deck with a wet mop so as to keep the asbestos dust from going back into the air in the crew quarters." Id.

Ciolino also introduced two Navigation and Vessel Inspection Circulars published by the United States Coast Guard.[11] The first, Navigation and Vessel Inspection Circular 5-80 ("NVIC

---

[10] Keystone argues that paragraph 7 of Ciolino's affidavit should be struck because it contradicts Ciolino's deposition testimony. D. 96-1 at 8-9. The statement in Ciolino's affidavit regarding asbestos collecting during bad weather, however, does not contradict his deposition testimony, as Ciolino did testify to being warned about asbestos during cleanup following rough weather on the ship. See D. 82-7 at 53. The Court, therefore, will not strike this paragraph.

[11] Keystone argues that the Navigation and Vessel Inspection Circulars should be struck because they constitute inadmissible hearsay. D. 96-1 at 11. The Court concludes that the NVICs are admissible under the public records exception to the hearsay rule, Fed. R. Evid. 803(8)(A); see In

5-80"), published on March 13, 1980, states, "[a]ll vessels have some asbestos insulation material on board." D. 93-3 at 2. The second, Navigation and Vessel Inspection Circular 6-87 ("NVIC 6-87"), published on September 21, 1987, states, "[s]hips that were constructed between 1940 and 1975 used substantial amounts of asbestos for insulation and fire protection." D. 93-5 at 1. The S.S. CHILBAR was built in 1959. D. 85 ¶ 8; D. 87 ¶ 8. The evidence of the officers' statements regarding the asbestos on the vessel combined with the NVICs create, at minimum, a dispute of material fact as to the presence of asbestos on the vessel.

Even assuming *arguendo* the presence of asbestos on the S.S. CHILBAR, Keystone still contends that, as a matter of law, Ciolino has failed to show causation. On this record, which includes the medical records and expert disclosures of three of Ciolino's treating physicians, the Court cannot agree. Ciolino's medical records reflect treatment for BAPE. D. 82-4 at 1-2; D. 82-3 at 1, 5. His treating physicians are expected to testify to the same at trial and that asbestos exposure causes BAPE. D. 82-6 at 2, 6, 8-9, 11, 15-16. The evidence, therefore, at least shows a disputed issue of fact regarding whether Ciolino's exposure to asbestos on Keystone's vessel caused his injury. See Badamo v. Chevron U.S.A. Inc., 602 F. Supp. 3d 646, 661-62 (S.D.N.Y. 2022) (denying summary judgment to defendant on a Jones Act negligence claim where plaintiff suffering from asbestos-related cancer introduced sufficient evidence "to support at least a circumstantial case that [plaintiff] was exposed to asbestos on the [defendant's] vessels").

Accordingly, the Court denies the motion for summary judgment as to the negligence claim under the Jones Act, Count I.

---

re complaint of Armatur, S.A., 710 F. Supp. 390, 402 (D.P.R. 1988); Coates v. A C & S Inc., 844 F. Supp. 1126, 1132-34 (E.D. La. 1994). The public record is admissible unless the opponent can show that the document indicates a lack of trustworthiness, Fed. R. Evid. 803(8)(B), which is not challenged here.

### 2. *Unseaworthiness (Count II)*

An unseaworthiness claim "enforces the shipowner's absolute duty to provide to every member of his crew a vessel and appurtenances reasonably fit for their intended use." Ferrara, 99 F.3d at 453 (internal citation and quotation marks omitted). This "duty includes maintaining the ship and her equipment in a proper operating condition, and can be breached either by transitory or by permanent defects in the equipment." Id. Unseaworthiness may also "arise from the employment of an unsafe method of work such as the shipowner's failure to provide adequate equipment for the performance of an assigned task or necessary safety equipment." Vargas v. McNamara, 608 F.2d 15, 18 (1st Cir. 1979) (citation omitted).

To state a claim for unseaworthiness, a seaman must show "that the unseaworthy condition was the sole or proximate cause of the injury sustained." Ferrara, 99 F.3d at 453. "Proximate cause requires that the unseaworthy condition is the 'cause which in the natural and continuous sequence, unbroken by any efficient intervening cause, produces the results complained of, and without which it would not have occurred.'" Napier, 454 F.3d at 68 (quoting Brophy v. Lavigne, 801 F.2d 521, 524 (1st Cir. 1986)). There need not be a finding of negligence to find unseaworthiness, as "unseaworthiness is a condition, and how that condition came into being— whether by negligence or otherwise—is quite irrelevant to the owner's liability for personal injuries resulting from it." Ferrara, 99 F.3d at 453 (emphasis in original) (quoting Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 498 (1971)).

Asbestos exposure or the presence of asbestos on the vessel qualifies as an unseaworthy condition. See Austin v. Unarco Indus., Inc., 705 F.2d 1, 12 (1st Cir. 1983) (stating that "unseaworthiness can arise not only from something as nautical as a faulty anchor windlass but from something as unmaritime as the presence on a ship of a hazardous chemical"); see also Whittington v. Ohio River Co., 115 F.R.D. 201, 210 (E.D. Ky. 1987) (concluding that a vessel

containing friable asbestos is unseaworthy). As discussed in the Jones Act negligence analysis above, the question of whether the S.S. CHILBAR was in fact contaminated with asbestos remains a disputed issue of material fact.

As also noted above, Ciolino has at least presented a disputed issue of fact as to whether the presence of asbestos on the ship was caused his medical conditions, namely his BAPE and related injuries. To prevail on a theory of unseaworthiness, [plaintiff] ha[s] to prove that the unseaworthy condition was a direct and substantial cause of his injury." Gifford v. American Canadian Caribbean Line, Inc., 276 F.3d 80, 83 (1st Cir. 2002). Ciolino spent a total of approximately 600 days working and living on the S.S. CHILBAR. D. 85 ¶ 7; D. 87 ¶ 7. According to Ciolino, the asbestos insulated pipes, ceiling panels and wall panels were located within the crew quarters, both in the passageways and inside the individual crew cabins. D. 93-1 ¶ 4. Ciolino asserts that the asbestos was disturbed both during normal weather conditions due to the vibration of the vessel from the operation of the steam engine and during rough weather when the vessel would rock in the sea. D. 93-1 ¶ 7. When the asbestos dust would collect in the crew quarters, Ciolino was tasked with sweeping it up. Id. The asbestos insulation was also located within the engine compartment, where Ciolino, on at least one occasion, spent a significant period of time welding as part of his regular duties while working on the S.S. CHILBAR. D. 93-1 ¶ 8.[12] As noted above, the medical records and experts show that Ciolino is being treated for BAPE, which is caused by exposure to asbestos. This evidence creates a dispute as to whether Ciolino's

---

[12] Keystone argues that paragraph 8 of Ciolino's affidavit should be struck because it contradicts his deposition testimony. D. 96-1 at 9-10. This paragraph, however, does not contradict Ciolino's deposition testimony, as Ciolino did indeed testify that there was insulation in the engine room and that he had to go to the engine room to weld. 82-7 at 57-59. The Court, therefore, will not strike this paragraph.

exposure to asbestos while on the S.S. CHILBAR was a direct and substantial cause of his injury. Gifford, 276 F.3d at 83.

Accordingly, the Court denies the motion for summary judgment on the unseaworthiness claim, Count II.[13]

**VI.  Conclusion**

For the foregoing reasons, the Court denies Keystone's motion to strike Ciolino's late-filed Rule 26(a)(2)(C) expert disclosure of non-retained treating physicians, D. 83, and denies as moot Keystone's first motion for summary judgment, D. 72.  As to Keystone's second motion for summary judgment, the Court denies the motion as to all counts, D. 89.

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

[13] Other than his arguments about Counts I and II, Keystone does not raise a separate basis for finding summary judgment in its favor as to maintenance and cure claim, Count III.  Since "[t]he basic facts essential to a maintenance and cure recovery are all usually included within a Jones Act or unseaworthiness recovery," Jenkins v. Roderick, 156 F. Supp. 299, 304-305 (D. Mass. 1957), the Court also denies the motion for summary judgment as to Count III.